UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NANCY E. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.1:04-cv-1847-DFH-TAB |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Nancy E. Hall seeks judicial review of a decision by the Commissioner of Social Security denying her claim for supplemental security income under the Social Security Act.  An Administrative Law Judge (ALJ) determined that Ms. Hall had severe impairments of rheumatoid arthritis, osteoarthritis, fibromyalgia, chronic obstructive pulmonary disease, asthma, depression, panic attacks, post-traumatic stress disorder, and anxiety.  The ALJ concluded, however, that she was not disabled for purposes of the Social Security Act because she was still capable of performing a range of light work with several additional restrictions.  As explained below, the ALJ's decision is supported by substantial evidence and is therefore affirmed.

*Background*

Ms. Hall was born in 1953.  R. 636.  She has a ninth grade education and past work experience as a nurse's aide.  R. 40-41.  She alleges that she became disabled on January 1, 1997 as a result of back problems, lung problems, arthritis, chest pain, depression, and seizures.

The medical evidence in the record dates back to 1999.  Ms. Hall consistently complained to her doctors of joint and back pain and was diagnosed with rheumatoid arthritis and fibromyalgia, among other things.  She was given numerous medications for her medical conditions.  Ms. Hall also complained to her doctors about being depressed and was seen at the mental health clinic for this several times.  She was treated with medications for her mental health conditions as well.  In addition, Ms. Hall sought treatment for her pulmonary conditions.  She was eventually diagnosed with chronic obstructive pulmonary disease, asthma, and oxygen desaturation during sleep.  Ms. Hall's doctors often recommended that she stop smoking and would refer her to a smoking cessation clinic.  Numerous consulting examiners confirmed Ms. Hall's doctors' diagnoses.

Ms. Hall filed her first application for supplemental security income on November 12, 1999.  This claim was denied initially on January 20, 2000, and was denied on reconsideration on May 16, 2000.  On March 6, 2001, Ms. Hall filed a new application for supplemental security income, which is the application under review here.  That claim was denied initially on September 25, 2001 and on

reconsideration on July 2, 2002.  A request for a hearing was filed, and the hearing was eventually held on May 13, 2003.  In his opinion, the ALJ stated that there was no new and material evidence that would warrant a reopening of the previous application.  R. 16.

During the hearing, Ms. Hall testified that she had rheumatoid arthritis, depression, post-traumatic stress disorder, panic attacks, degenerative disc disease, lumbar stenosis, chronic obstructive pulmonary disease, asthma, shortness of breath, fibromyalgia, restless leg syndrome, pain in her feet, and sleep apnea for which she uses oxygen.  R. 39, 45-46.  She said she had swelling in her hands and had difficulty turning faucets.  R. 50.  She also testified that she could not carry a gallon of milk without dropping it.  R. 61-64.  Ms. Hall reported having panic attacks that lasted for about 20 to 30 minutes about twice a week.  R. 51-52, 56-59.  She said aerosols, perfumes, and walking affected her breathing and resulted in asthma attacks.  R. 55.  However, her medication relieved her asthma attack in a minute or so.  She testified that she could probably stand for half an hour and sit for an hour or maybe less.  R. 53-54.

The ALJ concluded that Ms. Hall was not disabled for purposes of the Social Security Act.  R. 29.  The Appeals Council denied Ms. Hall's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  R. 6-8.  Ms. Hall now seeks this court's review of the denial of her application.

*The Statutory Framework for Determining Disability*

Ms. Hall seeks supplemental security income under Title XVI of the Social Security Act. To be eligible for supplemental security income benefits, a person must both be disabled and meet certain income restrictions, which are not disputed here. 42 U.S.C. § 1382(a). The Act defines "disability" as an inability to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to cause death or to last for twelve continuous months. See 42 U.S.C. § 1382c(a)(3)(A). Ms. Hall was disabled if her impairments were of such severity that she was unable to perform work that she previously had done, and if, based on her age, education, and work experience, she could not engage in any other kind of substantial work existing in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

This standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Substantial impairments do not necessarily entitle a claimant to benefits. Before tax dollars – including tax dollars paid by others who work despite serious and painful impairments – are available as disability benefits, it must be clear that the claimant has a severe impairment and cannot perform virtually any kind of work. Under the statutory standard, these benefits are available only as a matter of nearly last resort.

The ALJ followed the familiar five-step analysis set forth in 20 C.F.R. § 416.920 to determine whether Ms. Hall was disabled under the Social Security Act. The steps are as follows:

(1)   Is the claimant engaging in substantial gainful activity? If so, he or she is not disabled.

(2)   If not, does the claimant have an impairment or combination of impairments that are severe? If not, he or she is not disabled.

(3)   If so, does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant is disabled.

(4)   If not, can the claimant do his or her past relevant work? If so, he or she is not disabled.

(5)   If not, can the claimant perform other work given his or her residual functional capacity, age, education, and experience? If so, then he or she is not disabled. If not, he or she is disabled.

See generally 20 C.F.R. § 416.920. When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The ALJ found that Ms. Hall satisfied step one because she had not engaged in substantial gainful activity since her alleged disability onset date. R. 17. The ALJ found that Ms. Hall also satisfied step two because she had severe impairments of rheumatoid arthritis, osteoarthritis, fibromyalgia, chronic obstructive pulmonary disease, asthma, depression, panic attacks, post-traumatic stress disorder, and anxiety. R. 23. The ALJ determined that Ms. Hall's

impairment of probable restless leg syndrome was not severe because it did not impose a limit on her ability to work.

At step three, the ALJ found that Ms. Hall's impairments, singly or in combination, did not meet or equal the severity of a listed impairment that leads to an automatic finding of disability. R. 24. At step four, the ALJ found that Ms. Hall had the residual functional capacity to perform "a significant range of light work." R. 27. That finding meant she could no longer do her past work as a nurse's aide, which was physically heavy work. The ALJ did not fully credit Ms. Hall's allegations of the extent of her pain and functional limitations, but he found that she was limited to jobs that (a) would allow her to alternate between sitting and standing positions for one to two minutes per hour, (b) were repetitive and simple in nature, (c) with nor more than superficial interaction with others, and (d) with little exposure to noxious fumes, gases, respiratory irritants, and extremes of temperature and humidity. At step five, the ALJ found that with these restrictions, Ms. Hall could perform some types of light, unskilled work that existed in significant numbers in the state and national economy; specifically, she could perform as an assembler, inspector, or hand packager. R. 28. Thus, the ALJ concluded that Ms. Hall was not disabled as defined in the Social Security Act and therefore not entitled to benefits.

*Standard of Review*

If the Commissioner's decision is both supported by substantial evidence and based on the proper legal criteria, it must be upheld by a reviewing court. 42 U.S.C. § 1383(c)(3), citing 42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), citing *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).

The ALJ must examine the evidence that favors the claimant as well as the evidence that supports the claim's rejection. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of the conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*,

78 F.3d 305, 309 (7th Cir. 1996).  Also, the ALJ must explain the decision with "enough detail and clarity to permit meaningful appellate review."  *Briscoe*, 425 F.3d at 351.

*Discussion*

Ms. Hall argues that the ALJ made three errors:  (1) the ALJ erred in his credibility determination given the objective medical evidence in favor of disability; (2) the ALJ erred in failing to obtain an updated physician opinion regarding the Listings and the effect of Ms. Hall's recent medical developments on her ability to work; and (3) the ALJ erred in neglecting to provide a narrative supporting his determination of Ms. Hall's residual functional capacity.

I.     *The ALJ's Credibility Determination*

The ALJ did not fully credit Ms. Hall's own testimony that her impairments disabled her.  He wrote:  "In evaluating the claimant's testimony, in light of the objective evidence of record, I do not credit [that] her allegations of pain and/or other functional limitations [are] so severe that she cannot work."  R. 24.  Ms. Hall contends that the ALJ came to an incorrect credibility determination given the objective evidence, which she alleges is in favor of disability.

Generally, because an ALJ is in a better position than a reviewing court to assess a claimant's credibility, an ALJ's credibility finding is entitled to deference

and will not be disturbed unless it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Diaz*, 55 F.3d at 308.  An ALJ may discount a claimant's subjective assessments where they are internally inconsistent or inconsistent with other objective medical evidence in the record.  See *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (affirming ALJ's denial of disability benefits based in part on ALJ's credibility determination:  "An ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole."); SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").  However, the ALJ may not discount a claimant's complaints merely because they are not supported by objective medical evidence.  *Knight*, 55 F.3d at 314.  "The absence of objective medical evidence is just one factor to be considered along with:  (a) the claimant's daily activities; (b) the location, duration, frequency and intensity of pain; (c) precipitating and aggravating factors; (d) type, dosage, effectiveness and side effects of medication; (e) treatment other than medication; (f) any measures the claimant has used to relieve the pain or other symptoms; and, (g) functional limitations and restrictions."  *Knight*, 55 F.3d at 314, citing 20 C.F.R. § 404.1529(c)(3).  The ALJ need not mechanically recite findings on each factor, but the ALJ must give specific reasons for the weight given to the individual's statements.  SSR 96-7p.

In this case, the ALJ's credibility finding is supported by substantial evidence and is not patently wrong.  The ALJ thoroughly discussed the medical

evidence in the record.  R. 17-22.  He later addressed more specifically the objective evidence that conflicted with Ms. Hall's allegations that her pain and functional limitations were so severe that she could not work at all.  R. 24-26.  For instance, in 2000, consulting examiner, Dr. Hamoui, indicated that Ms. Hall had only mild swelling of her fingers and toes, her gait was normal, and there were no signs of inflammation of the joints.  R. 603.  Furthermore, she had only mild limitation of motion of the dorsolumbar spine and in the wrists and ankles.  Later that year, Dr. Dixon stated that there was no indication of hallucinations or delusions, and Ms. Hall's mood and affect were pleasant.  R. 583.

The ALJ went on to point out that in January 2001, Dr. Bradley reported that Ms. Hall's only major complaint was of back pain, and that she was able to do her activities of daily living.  R. 25, 322, 508.  And in May of that year, even though Ms. Hall complained that she had a flare of rheumatoid arthritis, an examination revealed that her sensation was normal, reflexes were symmetric and equal, and motor strength was intact.  R. 304.  Dr. Bradley's assessment was that Ms. Hall's rheumatoid arthritis was inactive.  In June 2001, Ms. Hall underwent an examination by another consulting examiner, Dr. Issa.  R. 246-249.  And as Dr. Hamoui had reported in 2000, Dr. Issa found that Ms. Hall's gait, muscle strength, deep tendon reflexes, sensation, and fine finger manipulative abilities were normal.  Dr. Issa also reported that there was no perceived exertional dyspnea (shortness of breath) and that Ms. Hall did not have difficulty in getting

out of a chair or on and off the examination table.  Ms. Hall had some loss of motion of the lumbosacral spine, but no neurological deficit.

In October 2001, Ms. Hall reported a positive response to medications for depressive symptoms.  R. 279.  She was found to be bright, alert and more cheerful.   She complained of falling and blackout spells, but electro-encephalograms were normal.  R. 277.  Also that month, Dr. Bradley found no synovitis, normal muscle strength, and symmetrical reflexes.  R. 300. He noted several tender points and right trochanteric tenderness.  Her rheumatoid arthritis was doing very well, and her sleep and mood were okay.  X-rays of Ms. Hall's feet and hands taken in June 2002 showed scattered erosions, indicating "early" rheumatoid arthritis.  R. 102-06.  In July 2002, Dr. Bradley indicated that Ms. Hall had stable rheumatoid arthritis, fibromyalgia, lumbar spondylosis, and depression.  R. 96.  X-rays of the lumbar spine in August 2002 indicated "mild" osteoarthritis of L4 and L5.  R. 95.  Dr. Bradley stated in October 2002 that the fibromyalgia was causing most of the pain.  R. 88.  New x-rays of the lumbar spine in January 2003 revealed "mild" degenerative disc and degenerative joint disease at L4-L5.  R. 79.  In February 2003, a sleep study conducted, Dr. Ober showed that Ms. Hall did not have sleep apnea but did have oxygen desaturation during sleep.  R. 76-77.  She was titrated for nocturnal oxygen with a good response.

In sum, the ALJ repeatedly noted all of Ms. Hall's medical conditions, including fibromyalgia, rheumatoid arthritis, and degenerative disc disease.  This

indicates that he took the combined effects of these conditions into account.  He also considered her complaints of pain.  In deciding the extent to which he should credit her complaints, however, he pointed to the objective record, which time and again indicated that her medical conditions were "mild" or in the "early" stages.  The ALJ did not ignore the objective evidence.

Ms. Hall also points to the fact that her doctors changed her medication from Vicodin to MS Contin, a stronger pain medication, due to her increasing pain.  The ALJ noted in his opinion that Dr. Bradley prescribed MS Contin in October 2002.  R. 22, 88.  Ms. Hall asserts that this indicates that her doctors believed her severe pain complaints.  The ALJ understood this, but he acted within his delegated duties when he found, and explained his finding, that Ms. Hall's subjective complaints were not fully credible to the extent that she could do no work at all.  Determining credibility is particularly important in a case such as this, where the symptoms of one of the principal impairments are entirely subjective.  See, *e.g., Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("fibromyalgia is not always (indeed, not usually) disabling"); *Sarchet*, 78 F.3d at 306 (the cause of fibromyalgia is "unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective").

The ALJ considered factors in addition to the objective medical evidence as well.  He noted that Ms. Hall took medications that relieved her symptoms and did not cause any significant side effects.  R. 25.  Ms. Hall argues that the ALJ points

to no records to support this conclusion.  In fact, the ALJ stated several times that he made his credibility determination in light of the objective evidence of the record as a whole.  In an earlier discussion of the testimony, the ALJ noted that Ms. Hall had testified that her asthma attacks could be relieved with her medication. Also, Ms. Hall often reported to her doctors a positive response to the medications.  For instance, on October 10, 2001, Ms. Hall reported a positive response to the medications she had been taking for her depression, R. 279, and on May 14, 2002, she told Dr. Khan that her medications helped her some.  R. 207.  Ms. Hall did not have to go through any further medical interventions, beyond the medications, for her pain.  Cf. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (reversing ALJ's adverse credibility finding in part because the record revealed that claimant had been prescribed heavy doses of strong medications and had undergone extensive pain-treatment procedures, including implantation of spinal catheter and spinal cord stimulator).

Ms. Hall contends that the ALJ ignored her doctor's finding of oxygen desaturation during sleep, which explains her fatigue and sleepiness.  This argument is misguided.  The ALJ mentioned the finding of desaturation during sleep several times in his opinion.  R. 22, 25.  He also noted that Ms. Hall was titrated for nocturnal oxygen with a good response, R. 25, lending further support to the ALJ's statement that Ms. Hall's medications relieved her symptoms and caused no significant side effects.

The ALJ also noted that Ms. Hall was able to engage in daily and social activities.  R. 25.  In an earlier discussion of the record, the ALJ noted that in May 2000, Ms. Hall was living with a friend, who reported that Ms. Hall helped by watching her children three days a week.  R. 23, 174.  This involved giving the children their medicine and getting them off to school.  Ms. Hall would sometimes prepare meals, help with household chores, wash dishes, do laundry, and fold clothes.  Furthermore, in May 2001, Ms. Hall reported that she liked to read the newspaper and that she had birds and liked to play with them and take care of them.   R. 149.   Ms. Hall said she got along with her family, friends, and neighbors.[1]  R. 115-16.  She visited people and sometimes they visited her.  She read and watched television and had no problem concentrating.  The ALJ gave appropriate consideration to these daily and social activities among many factors that supported his conclusion.

Finally, the ALJ cited medical opinions from acceptable medical sources.  R. 26.  In 2000, two state agency reviewing physicians determined that Ms. Hall had the residual functional capacity to perform medium work.  R. 594-601.  The ALJ decided to limit Ms. Hall further by finding that she could do only light work.  R. 26.  This was supported by the opinion of state agency reviewing physician, Dr. Landwehr, who determined in 2001 and again in 2002 that Ms. Hall could do only

---

[1]In his opinion, the ALJ stated that Ms. Hall reported this in October 2002.  R. 23-24.  The record reveals, however, that she actually did so on June 19, 2002.  R. 115-16.

light work.  R. 238-45.  The ALJ did not ignore the objective evidence in the record, as shown by his thorough discussion of her impairments.

In sum, the ALJ looked at the objective medical evidence in the record, the effectiveness of Ms. Hall's medications in relieving her pain, the accounts of her daily activities, as well as the opinions of the state agency physicians and psychologists in determining that her allegations of the severity of her symptoms, including pain, were not fully credible.

The ALJ also took Ms. Hall's complaints into account when he determined that she retained the residual functional capacity to do only light work.  This is reflected by the limitations the ALJ placed on the type of work Ms. Hall could do. He indicated that the light work could involve "lifting and carrying 20 pounds occasionally and 10 pounds frequently."  R. 27.  He found that Ms. Hall could stand and walk for about six hours and sit for about six hours, if she were allowed "to alternate into a sitting/standing position for periods totaling about 1-2 minutes per hour."  He also specified that the work should require "no more than occasional bending, squatting, or climbing of stairs or ramps; no kneeling, crawling, or climbing of ropes, ladders, or scaffolds; avoiding work at unprotected heights, around dangerous machinery, around open flames, and around large bodies of water; and avoiding operating a motor vehicle."

Ms. Hall is correct that there is evidence in the record substantiating the fact that her impairments were real.  The ALJ's conclusion, based on the evidence as a whole, that her impairments were not completely disabling, is supported by substantial evidence.

II.    *Whether an Updated Physician Opinion was Needed*

Ms. Hall argues that the ALJ erred by failing to obtain an updated physician opinion regarding the Listings and the effect her recent medical developments had on her ability to work.  She points to the fact that the ALJ's residual finding capacity finding is consistent with the opinion of state agency reviewing physician, Dr. Landwehr, who determined in 2001 and again in 2002 that she had the residual functional capacity to perform light work.  Ms. Hall contends that the x-rays of her hands and feet in June 2002 and the sleep study performed in 2003 might have changed the doctor's opinion.  The x-rays of her hands revealed scattered erosions consistent with early rheumatoid arthritis, R. 102, and the x-rays of her feet showed scattered erosions consistent with early rheumatoid arthritis, a hallux valgus deformity, and bilateral heel spurs.  R. 105.  The sleep study revealed oxygen desaturation during sleep.  R. 76-77.

Because of the non-adversarial nature of Social Security proceedings, the ALJ is responsible for developing a fair and full record.  *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Williams v. Massanari*, 171 F. Supp. 2d 829, 833 (N.D. Ill. 2001) (remanding case where medical expert at hearing specifically qualified

his testimony because of missing medical records and ALJ relied on expert's opinion).  In addition, SSR 96-6p requires an ALJ to consult a medical expert if: (a) in the opinion of the administrative law judge, the evidence suggests that the claimant's condition may be medically equal to one of the listed impairments; or (b) additional evidence is received that, in the opinion of the administrative law judge, may change the state agency physician's opinion that the impairments are not equivalent to a listed impairment.

The ALJ properly relied on the opinions of several state agency physicians and psychologists, Ms. Hall's doctors, and consulting examiners when making his residual functional capacity determination.  The ALJ was not required to submit the recent x-rays and sleep study to a medical expert for a new review.  He noted both of these new developments numerous times, which indicates that he considered them when making his determination, and the record was otherwise adequately developed.  These medical developments contained no new medical findings or analysis.  Ms. Hall's doctors had repeatedly diagnosed her with rheumatoid arthritis.  The ALJ noted the diagnosis throughout his opinion and included in his findings that Ms. Hall had severe rheumatoid arthritis. R. 23.  The x-rays merely confirmed this diagnosis.  The x-rays also indicated that the condition was still in the "early" stages.  The sleep study was nothing new either.  Ms. Hall's doctors had previously noted that she might have obstructive sleep apnea. R. 90.  The sleep study came back negative for sleep apnea but showed

oxygen desaturation during sleep.  R. 76.  This was treated successfully with nocturnal oxygen.

Ms. Hall's reliance on SSR 96-6p is misplaced.  She has not explained how any of her conditions met or equaled a listed impairment, and the ALJ expressly found that the evidence did not support such a finding.  For instance, Listing 1.02 requires major dysfunction of a joint characterized by gross anatomical deformity, and joint space narrowing, bony destruction, or ankylosis of the affected joint, with the involvement of one major weight bearing joint, resulting in an inability to ambulate effectively, or involvement of one major peripheral joint in each upper extremity, resulting in an inability to perform fine and gross movements effectively.  R. 23.  The ALJ noted that none of these requirements were documented in the record.  The new x-rays did not reveal any of these characteristics either.  The ALJ acted within his discretion in deciding that the existing evidence was sufficient to make a finding about Ms. Hall's disability.  This exercise of his discretion did not amount to "playing doctor."  Cf. *Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003) (citing cases in which ALJ substituted his own judgment for a physician's opinion without relying on other medical evidence or authority in the record).

III.    *The ALJ's Residual Functional Capacity Determination*

Ms. Hall argues that the ALJ neglected to provide a narrative citing to particular evidence to support his residual functional capacity determination.

Residual functional capacity is an assessment of what a claimant can still do despite her limitations.  20 C.F.R. § 416.945(a)(1).  This assessment does not equal a determination of disability.  Instead, it helps to evaluate the types of work that might be available to a claimant with particular limitations.   20 C.F.R. § 416.945(a)(5).  The final responsibility for deciding a claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 416.946(c).  The ALJ determines residual functional capacity by considering all relevant medical and non-medical evidence, which includes descriptions and observations (by the claimant and third parties, including physicians) of the claimant's limitations, such as pain, which go beyond symptoms, as well as medical reports and statements as to what a claimant can still do.  20 C.F.R. § 416.945(a)(3).

Ms. Hall asserts that the ALJ should have included an explanation of how she can be expected to stand on her feet for long periods of time and use her hands regularly given her medical conditions of rheumatoid arthritis and fibromyalgia and her complaints of pain.  In fact, the ALJ placed a significant amount of restrictions on the type of work Ms. Hall could perform.  R. 27.  As part of his residual functional capacity finding, the ALJ determined that she could stand and walk for about six hours and sit for about six hours, *provided* that she would be allowed to "alternate into a sitting/standing position for periods totaling about 1-2 minutes per hour."  These limits were established at least in part based on Ms. Hall's early rheumatoid arthritis and complaints of pain.  The residual functional capacity described by the ALJ includes only "light work, lifting and

carrying 20 pounds occasionally and 10 pounds frequently . . . no kneeling, crawling, or climbing of ropes, ladders, or scaffolds . . . [t]he work should be simple and repetitive in nature."  On the basis of the ALJ's residual functional capacity, the vocational expert testified that Ms. Hall could work as an inspector, assembler, or hand packager.

An ALJ is not required to provide an in-depth analysis of every piece of evidence the claimant provides.  *Diaz*, 55 F.3d at 307-08; *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984).  The question is whether the reasons given by the trier of fact build an accurate and logical bridge between the evidence and the result.  *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).  The ALJ is required to account for "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand."  *Nelson*, 131 F.3d at 1237.  The ALJ must offer a minimal articulation of his assessment of such medical evidence to show that the ALJ considered the evidence the law requires him to consider.  *Stephens*, 766 F.2d at 288; cf. *Bates v. Apfel*, 69 F. Supp. 2d 1143 (N.D. Iowa 1999) (remanding case where ALJ failed to discuss chronic pain syndrome and failed to take into account claimant's pain).

The minimal articulation standard is met when the court can "track the ALJ's reasoning and be assured that the ALJ considered the important evidence." *Diaz*, 55 F.3d at 308, quoting *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). Cf. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (minimal articulation

standard not met where court was unable to discern how the ALJ arrived at his findings apart from substituting his own judgment for medical evidence).  Finally, a court reviewing the ALJ's opinion should give it "a commonsensical reading rather than nitpicking at it." *Shramek*, 226 F.3d at 811, quoting *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).  Remand is appropriate only when the ALJ's decision is "in a word, unreasoned." *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

The ALJ's decision satisfies the minimal articulation standard with respect to Ms. Hall's evidence of the various medical conditions that affect her feet and hands and cause her pain.  The ALJ extensively considered all of the evidence in the record, including her testimony.  More specifically, he noted that Ms. Hall's doctors often diagnosed her with rheumatoid arthritis.  See R. 18, 20, 21.  Her doctors usually indicated that this condition was "stable," R. 18, 19, "inactive," R.19, or "doing very well."  R. 21.  The ALJ also noted the most recent x-rays of her feet and hands, which indicated early rheumatoid arthritis, several times.  R. 22, 25.  Ms. Hall's fibromyalgia and complaints of pain were also sufficiently addressed by the ALJ.  He discussed them throughout his opinion.  See R. 17, 18, 20, 21.  He explicitly stated:  "in making this [residual functional capacity] assessment, I have considered all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 416.929, and Social Security Ruling 96-7p."  R. 24.

In making his credibility determination, the ALJ again considered the objective evidence of the record; he also took into account Ms. Hall's medications, daily activities, and the opinions of the state reviewing agency physicians and psychologists.  Only after a full discussion of the record and an explanation of his credibility determination did the ALJ make his residual functional capacity determination.  Thus, the ALJ's discussion of the evidence and his credibility determination serve as the narrative supporting the residual functional capacity finding.

Finally, Ms. Hall asserts that the hypothetical question posed by the ALJ to the vocational expert did not include all of her impairments, namely her pain, decreased range of motion of the spine, swelling and scattered erosions in her hands, and scattered erosions and restricted range of motion of her ankles. During the hearing, the ALJ asked the vocational expert what kind of work a person of Ms. Hall's age, education, experience, and residual functional capacity could do.  R. 65.  The vocational expert responded that such a person could work as a hand packager, an inspector, or an assembler.  R. 66.

As noted above, since the court can track the ALJ's reasoning with respect to the evidence, including all of Ms. Hall's impairments, the residual functional capacity finding was warranted.  And since the hypothetical question posed to the vocational expert included the residual functional capacity as found by the ALJ, it was proper.  The ALJ placed limitations on the work Ms. Hall could do as a

direct result of her impairments and complaints of pain.  In sum, the hypothetical question included all of Ms. Hall's impairments and complaints to the extent credited by the ALJ, and those underlying findings are supported by substantial evidence.

*Conclusion*

For the foregoing reasons, the court finds that the ALJ's decision denying benefits is supported by substantial evidence and does not reflect a legal error that would require remand.  Accordingly, the ALJ's decision is affirmed.  Final judgment will be entered accordingly.

So ordered.

Date: June 15, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov